ROESLER, Appellant, vs. SHASTRI, Respondent.

*October 10—November 6, 1918.*

*Fraud: Bank draft obtained by deceit: Replevin: Evidence: Questions for jury: Physicians and surgeons: License to practice: Hypnotism.*

1. The law as to deceit is intended to protect the ignorant and credulous as well as the wise and wary.

2. In replevin to recover a bank draft alleged to have been obtained by defendant through fraudulent representations that he was a licensed physician and could by the use of hypnotic influences cure plaintiff's insane wife, it is *held*, upon the evidence, to have been a question for the jury whether or not plaintiff was so deceived and defrauded; and the direction of a verdict for defendant was error.

3. There being evidence in such case sufficient to warrant a finding that defendant held himself out as a doctor, the fact that he was not required to be licensed to heal by mental science or hypnotic suggestion is immaterial on the question of actual fraud.

4. Although in such case the defendant admitted on the trial that plaintiff's wife was neither cured nor benefited, the plaintiff should have been permitted to prove that she had been injured by the treatment, such proof being pertinent on the issue of fraud.

5. Replevin will lie to recover goods—in this case a bank draft—obtained from the plaintiff by fraud.

APPEAL from a judgment of the circuit court for La Crosse county: E. C. HIGBEE, Circuit Judge. *Reversed.*

Replevin to recover bank draft of $950 alleged to have been obtained from plaintiff through fraudulent representations of the defendant. Plaintiff, a farmer whose wife had

been suffering from insane delusions for thirteen or fourteen months and had been at a hospital three times, engaged the defendant to treat her. Plaintiff testifies that defendant held himself out as a doctor and was called such, and it appears that he had used the title M.D. on his letter-heads; that he represented that he could by the use of hypnotic influences cure her, but that he must first destroy her mind entirely and make it like a child's and then build it up again. He assured plaintiff he could cure her, but he had to have $50 per day. Plaintiff agreed to pay that, and at the end of ten days the defendant claimed she was cured thirty per cent. and that the nurse could probably take care of her, but the plaintiff wanted a complete cure and asked defendant to stay longer. He said he could not unless plaintiff made a contract for ten more days at $50 per day. This plaintiff agreed to and defendant remained. At the end of the ten days defendant said she was cured fifty per cent. but that he could not stay longer and that he must have his money. So plaintiff went to town and gave him $50 in cash and the draft in suit. Plaintiff further testified that he believed defendant could cure her and that he could not tell when the draft was given whether she was better or not; that he learned afterward that defendant was no doctor and that his wife had not improved under defendant's treatment. Plaintiff offered to prove by other doctors that his wife grew worse under the treatment given her, but the evidence was excluded, presumably because defendant did not claim that his treatment had been of any benefit to her. It appears that defendant was a native of India who had been in this country since October 30, 1913; that he had been educated in India as a physician in the University of Binjab, but not licensed to practice in the United States; that he had traveled considerably in this country lecturing on Indian subjects and had pursued some medical studies in Chicago and Los Angeles and obtained a medical degree from the latter school. He claims he used hypnotic suggestion only in his

treatment of plaintiff's wife, but denies that he said he could cure her.

At the close of the evidence the court directed a verdict for defendant on the ground that there was no evidence in the case that defendant represented himself to plaintiff as a doctor or having the right or authority to practice medicine in Wisconsin, and on the further ground that plaintiff at the time he delivered the draft to defendant knew all he knew at the time of the trial and could not have relied upon any representations made by the defendant, who, professing to heal by spiritual or mental means, was not required to have a license in this state.

From a judgment in favor of defendant entered upon the directed verdict the plaintiff appealed.

For the appellant there was a brief by *Lees & Bunge* of La Crosse, and oral argument by *Geo. W. Bunge.*

For the respondent there was a brief by *Morris, Hartwell & Holmes* of La Crosse, and oral argument by *Fred H. Hartwell.*

VINJE, J. We think the court erred in directing a verdict in this case. It was a question for the jury to say whether or not plaintiff was deceived by defendant. The jury had a right to believe plaintiff's testimony and to draw the conclusion therefrom that he was defrauded of his money. He had an insane wife; that he was anxious to cure her is evidenced by the fact that he willingly paid $50 a day in an effort to do so. He was undoubtedly ignorant of what could or could not be done through mental healing or hypnotic suggestion. There is a sharp conflict of views on that subject by those who have given it study and attention. That he did not know is not strange. Neither is it strange that he was unable to diagnose the exact or even relative condition of his wife's mind at the time the draft was delivered. He had been told that her mind must first be wholly destroyed and then built up, and he evidently be-

lieved that. The law protects the ignorant and credulous as well as the wise and wary. *Miranovitz v. Gee,* 163 Wis. 246, 157 N. W. 790. He was told by defendant when he received the draft that her mind was fifty per cent. cured and that the nurse could take care of her afterward. We employ doctors to diagnose disease and to cure it or direct us what to do to effect a cure. That is their profession. When they give advice the patient is justified in following it unless it is so palpably contrary to sense or human experience as to be disbelieved by every one.

There is sufficient evidence in this case to warrant the jury in finding that the defendant held himself out as a doctor. A letter from him to the nurse which was shown to plaintiff has the heading *K. D. Shastri, M.D.,* and is signed *K. D. Shastri, M.D.* He was called doctor and made no protest. The fact that he was not required to be licensed to heal by mental science or hypnotic suggestion is immaterial on the question of actual fraud. An unlicensed person may make fraudulent representations.

Plaintiff should have been permitted to show by other doctors, if he could, that the treatment given his wife by the defendant was injurious and not beneficial. It is true the defendant's counsel on the trial admitted that she was neither cured nor benefited. But plaintiff's offer went further. He offered to prove that she had been injured by the treatment. Such proof was pertinent on the issue of fraud and should have been admitted.

Claim is made that, since in delivering the draft to the defendant plaintiff parted with the legal title thereto, he cannot maintain replevin to recover it. This court has several times negatived that claim and held that replevin will lie to recover goods obtained by fraud. *Singer v. Schilling,* 74 Wis. 369, 43 N. W. 101; *Lee v. Burnham,* 82 Wis. 209, 52 N. W. 255; *Mayhew v. Mather,* 82 Wis. 355, 52 N. W. 436.

*By the Court.*—Judgment reversed, and cause remanded for a new trial.